# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA POPPER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-4383 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JAMES A KAECH, SR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Joshua Popper ("Plaintiff") brought this lawsuit arising from his purchase of residential real estate from James A. Kaech, Sr. ("Defendant") [17]. Defendant moved to dismiss [18]. For the reasons stated below, Defendant's motion [18] is denied. Counsel are directed to file a joint status report no later than July 29, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

## I.     Background

In November 2019, Plaintiff entered into a real estate contract to purchase Defendant's former residence from Defendant for $150,000. [17, at ¶ 4]. Defendant executed a residential real property disclosure report ("property report") pursuant to the Residential Real Property Disclosure Act, 765 Ill. Comp. Stat. 77. [*Id.*, at ¶ 5]. Plaintiff relied on Defendant's representations in the property report in negotiating the terms of the contract, entering into the contract, and eventually closing on the contract. [*Id.*, at ¶ 8]. Plaintiff alleges that the property report made several false representations of fact related to (1) structural defects caused by termite defects, (2) material defects and cracks in the foundation and basement, (3) flooding and reoccurring leakage in the

basement, (4) the roof, and (5) the septic system (collectively, "material representations"). [*Id.*, at ¶ 7].

First, Defendant represented on the property report that he was unaware of any material defects in the walls, windows, doors, or floors of the property and that he was unaware of any structural defects caused by previous infestations of termites. [*Id.*, at ¶ 9]. However, in September 2020, Plaintiff first discovered that there was previously a severe infestation of termites and that termites had completely destroyed a significant portion of the walls, including structural walls, joists, and beams of the property that are generally necessary structural supports. [*Id.*, at ¶ 10]. To conceal the severe damage to the structure, Defendant erected new non-structural walls over the termite damage without replacing the wood for the structural walls, joists, and beams necessary to support the structure. [*Id.*, at ¶ 11]. Because of the termite damage, the property is structurally unsafe and uninhabitable. [*Id.*, at ¶ 12]. Replacement of the structural components of the property would cost at least as much as the property is worth. [*Id.*, at ¶ 13].

Next, Defendant represented on the property report that he was unaware of any material defects in the foundation or basement of the property. [*Id.*, at ¶ 14]. Contrary to this representation, there are several significant cracks and other material defects in the foundation of the residence at the property. [*Id.*, at ¶ 15]. To conceal these defects, the Defendant piled heavy construction materials in front of the cracks and defects to avoid detection by Plaintiff until after the closing of the transaction. [*Id.*, at ¶ 16]. Due to these defects, water seeps and leaks through the foundation and into the basement of the residence. [*Id.*, at ¶ 17]. The cracks and defects in the foundation render the property structurally unsafe and uninhabitable, and the cost to remediate them is $80,000. [*Id.*, at ¶¶ 20–21].

On the property report, Defendant also represented that he was aware of only "minor

seepage during heavy rains." [*Id.*, at ¶ 22]. However, the seepage in the residence is significant and occurs after even nominal amounts of rain. [*Id.*, at ¶¶ 2324].

Further, Defendant represented on the property report that he was unaware of any leaks or material defects in the roof, ceilings, or chimney of the property. [*Id.*, at ¶ 25]. Contrary to this representation, the roof has a significant leak that has caused water to leak into the bathroom and bedroom of the property when it rains. [*Id.*, at ¶ 26]. To conceal the roof leak, Defendant painted in the bathroom to cover up the water damage without also remediating the underlying source of the leak in the roof. [*Id.*, at ¶ 27]. The cost to fix the leaking roof is $6,500. [*Id.*, at ¶ 28].

Finally, Defendant represented on the property report that he was unaware of any material defects in the septic system. [*Id.*, at ¶ 29]. However, the septic system is functionally inoperable and was functionally inoperable at the time Defendant executed the property report. [*Id.*, at ¶ 30]. At all relevant times, the sewer line from the property was not properly connected to the septic tank and the septic tank was pitched incorrectly. [*Id.*, at ¶ 31]. Therefore, the sewer line does not properly drain to the septic tank, causing significant damage to the residence. [*Id.*, at ¶ 32]. The cost to remediate the septic system issues is $25,000. [*Id.*]. Plaintiff alleges that Defendant had actual knowledge of the septic system issue, and all other issues discussed above, at the time he executed the property report. [*Id.*, at ¶ 34].

Plaintiff brought this diversity action, requesting recission of the contract and damages and alleging breach of contract, a violation of the Residential Real Property Disclosure Act, and fraud. [*Id.*, at ¶¶ 35–61]. Defendant moved to dismiss the case under (1) Federal Rule of Civil Procedure 12(b)(7), arguing that a nondiverse party is necessary and indispensable to the action; and (2) Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to state a claim.

## II. Legal Standards

### A. Rule 12(b)(7) Joinder of Indispensable Parties

Rule 12(b)(7) permits dismissal for failure to join a party under Federal Rule of Civil Procedure 19. Rule 19 "permit[s] joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir.1990). Rule 19(a) establishes when a party is required to be joined. Specifically, a party "whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Such a party is also required to be joined if the party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence" would either (1) "as a practical matter impair or impede the person's ability to protect the interest;" or (2) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed R. Civ P. 19(a)(1)(B). If a party is necessary under Rule 19(a) but cannot be joined, courts turn to Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." "[F]ederal courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of federal forum." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). Further, "the party advocating for joinder generally has the initial burden to establish the absent person's interest." *In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018). "In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence." *Davis Cos.*, 268 F.3d at 480 n.4.

B.  Rule 12(b)(6) Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the party must include "the who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In determining whether the complaint meets these standards, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

III.  Analysis

A.  Dismissal for Failure to Join a Necessary Party

Defendant argues that Plaintiff's mortgagee is a necessary party and that, because the mortgagee is a resident of Illinois, the Court should dismiss the case under Rule 12(b)(7).[1]

---

[1] Defendant claims that the mortgagee is Guaranteed Rate, whose headquarters are in Illinois. [18, at 3–5]. Plaintiff contends that his mortgagee is the Mortgage Electronic Registration System, Inc., a Delaware corporation headquartered in Michigan. [20, at 8]. Plaintiff also argues that even if his mortgagee is Guaranteed Rate, Defendant has not offered sufficient evidence to demonstrate that Guaranteed Rate is headquartered in Illinois. [*Id.*]. The Court need not resolve these disputes because, as explained below, Defendant has not met its burden of demonstrating that Plaintiff's mortgagee—regardless of its identity— is a necessary party.

Defendant argues that the mortgagee is a necessary for two reasons. First, because the complaint alleges that the property is uninhabitable and a total loss and that these "alleged conditions would place mortgagee's security interest in jeopardy." [18, at 3]. Second, because "any remedy sought by Plaintiff, including recission, would require joinder of" the mortgagee because the "Court does not have jurisdiction to make an order impacting the mortgagee, including replacing the current mortgagor with Defendant." [*Id.*, at 3; 21, at 2]. Defendant then cites to only the general proposition that a defendant "asserting any title or possessory interest" in property "is an indispensable party to any relief which might be sought based upon or affecting title to the lands or any interest therein." [*Id.*, at 4 (quoting *Stewart v. United States*, 242 F.2d 49, 51 (5th Cir. 1957)]. Defendant provides no further argument or authority. These arguments suggest that Defendant contends that the mortgagee must be joined because it has "an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence" would "as a practical matter impair or impede [its] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B).

However, Defendant has not met his "initial burden to establish the absent person's interest." *In re Veluchamy*, 879 F.3d at 819 n.4. On his first argument—that the alleged conditions would place the mortgagee's security interest in jeopardy—Defendant does not explain how, even if the alleged conditions do impact the security interest, this lawsuit would impede the mortgagee's ability to protect its interest. As best the Court can discern, Defendant suggests that the allegations about the property's condition make the property less valuable and therefore a riskier security interest than it otherwise would be. However, it would not be the allegations of the conditions that impact the property's suitability as a security interest. Rather, it would be the conditions of the property itself, which exist regardless of what Plaintiff alleges in a complaint.

In regard to Defendant's second argument, Plaintiff's complaint states that the "court

6

should restore the parties to the *status quo* that existed prior to the parties entering into the contract" by "unwind[ing] the transaction and compel[ling] Defendant to repurchase the Property from Plaintiff for the amount of the Contract in exchange for Plaintiff deeding the Property back to Defendant." [17, at ¶ 46]. As Plaintiff notes, he is "not attempting to rescind the mortgage or his obligations under the mortgage." [20, at 8]. Defendant does not cite to any authority or otherwise explain how Defendant repurchasing the property from Plaintiff would "impair or impede" the mortgagee's "ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B); see also *Williams v. Mackay*, 54 V.I. 713, 724 (D.V.I. Jan. 6, 2011) (finding that mortgagee was not a necessary party in an action for partition of land because its "interest as mortgagee" was "that the mortgage debt be paid and that the property not be destroyed" and that "[t]hose interests are protected regardless of the outcome of the partition action"); *Bosteve Ltd. v. Marauszwki*, 110 F.R.D. 257, 260 (E.D.N.Y. 1986) (finding that because the mortgagee's "right to the balance of the loan" would "be unaffected by the outcome of" the litigation, the mortgagee was not a necessary party to a recission claim); *Thompson v. Tualatin Hills Park & Recreation Dist.*, 496 F. Supp. 530, 538 (D. Or. 1980), aff'd, 701 F.2d 99 (9th Cir. 1983) (finding that mortgagees were not necessary parties to an inverse condemnation action because their interests were for repayments of specific amounts and would remain unaffected by any judgment in the case); *cf. Huey v. Super Fresh/Sav-A-Ctr., Inc.*, 2009 WL 722738, at *2 n.15 (E.D. La. Mar. 17, 2009) (suggesting that mortgagee may be a necessary party because it had "an assignment of lease and rents that [became] absolute, entitling [it] to direct payment from" certain individuals, though declining to decide the issue because Rule 19(b) factors weighed against joining mortgagee if it were a necessary party).

Given the absence of argument and authority supporting Defendant's position, and the contrary authority cited above, the Court concludes that Defendant has not met its burden of

showing that the mortgagee must be joined. See *In re Veluchamy*, 879 F.3d at 819 n.4; *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993) (declining to join party where the plaintiff failed to explain how it was a necessary party); *Chi. Tchrs. Union v. DeVos*, 468 F. Supp. 3d 974, 989 (N.D. Ill. 2020). Accordingly, the Court declines to dismiss this case under Rule 12(b)(7).

### B. Dismissal for Failure to State a Claim

Defendant next argues that Plaintiff's complaint should be dismissed for failure to state a claim. [18, at 5–8]. Defendant first asserts that Plaintiff failed to adequately allege damages because the statement that Plaintiff "suffered 'great damage' is vague and improper." [18, at 5 (quoting 17, at ¶¶ 1, 40)]. However, the damages allegations in this case need only meet Rule 8's notice pleading standard. See *Smolinski v. Oppenheimer*, 2012 WL 2885175, at *3 (N.D. Ill. July 11, 2012) (explaining that general damages "need not be pled with specificity to make out a plausible case that" the plaintiff "is entitled to relief"). Moreover, Defendant's argument ignores the paragraphs in Plaintiff's complaint specifying his damages to the dollar amount. [See, *e.g.*, 17, at ¶¶ 13, 18, 21, 28].

Defendant argues that the recission claim fails because "Plaintiff's allegations that Defendant made material misrepresentations lacks factual support given that [the] said conditions were disclosed in a Professional Home Inspection, a Termite Inspection, and [a] Well and Septic Inspection prior to closing." [18, at 5–6]. Thus, Defendant continues, because Plaintiff's recission claim stems from these inaccurately alleged misrepresentations, it must be dismissed. Defendant attached a copy of these three inspections to his motion to dismiss. [See 18, at 55–96]. Defendant acknowledges that a court can only consider documents attached to a motion to dismiss without converting it to a motion for summary judgment if those documents are referred to in the complaint and central to the claim. [18, at 6 n.1 (citing *Brownmark Films, LLC v. Comedy Partners*, 682

8

F.3d 687, 690 (7th Cir. 2012))]. However, Defendant argues that the Court can refer to these documents because "Plaintiff's references to the defects in his [complaint] necessarily implicate the inspection report." [*Id.*]. Elsewhere, Defendant states that the inspection reports are "alluded to" in the complaint. [21, at 4]. Defendant does not cite to any specific paragraph in the complaint when making these claims. Moreover, implicating or alluding to a document is not the same as referring to it. Because the complaint does not refer to these three inspection reports, the Court declines to consider them. As such, any argument Defendant has made based on these documents fails.

Next, Defendant contends that Plaintiff failed to adequately plead a violation of the Illinois Residential Real Property Disclosure Act. This Act requires a seller to "disclose material defects of which the seller has actual knowledge." 765 Ill. Comp. Stat. 77/25(b). In arguing that Plaintiff has not stated a claim, Defendant notes that the Act provides that "[t]he seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if * * * the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy, or omission." [18, at 7 (quoting 765 Ill. Comp. Stat. 77/25(b) (alterations in original))]. Defendant then states that "the professional property inspection report, professional pest/termite inspection and the well and septic inspection disclose conditions that Plaintiff alleges were material misrepresentations amounting to fraud." [*Id.*]. From this citation and argument, it is difficult to discern whether Defendant argues that (1) the inspection reports were inaccurate and he is not liable for any material misrepresentation because any error, inaccuracy, or omission was based on information provided by the inspection reports or (2) the inspection reports were accurate and he

is not liable because Plaintiff had full knowledge of the property's conditions. Regardless, either argument depends on the three inspection reports attached to Defendant's motion to dismiss, which the Court will not consider in deciding this motion.

With respect to the breach of contract claim, Defendant argues that Plaintiff failed to state a claim because Plaintiff did not specify which portion of the contract Defendant allegedly breached. [18, at 6]. In response, Plaintiff notes that the Residential Real Property Disclosure Act is incorporated into residential real estate contracts in Illinois, and that he specifically alleged that Defendant breached the contract by making material misrepresentations in violation of the Act. [20, at 13 (citing *Fox v. Heimann*, 872 N.E.2d 126, 136 (Ill. App. 2007) (presuming "the provisions of the Disclosure Act are deemed to be part of the contract, as though expressly referred to or incorporated therein"))]. Defendant replies that Plaintiff did not allege sufficiently specific misrepresentations and that, regardless, the breach of contract claim is duplicative to Plaintiff's claim under the Residential Real Property Disclosure Act. [21, at 5]. As to Defendant's first argument, Plaintiff alleged specific material misrepresentations, as described in the background section above. As to the second, "district courts are accorded 'a great deal of latitude and discretion' to dismiss duplicative claims." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221 (7th Cir.1993)). Given that this case is in its early stages and that the elements of a breach of contract claim and claim under the Act do not wholly overlap, the Court declines to dismiss either claim as duplicative of the other. See *Willborn v. Sabbia*, 2011 WL 1900455, at *6 (N.D. Ill. May 19, 2011) (declining to dismiss potentially duplicative claim at the pleading stage). If further factual development of the case indicates that dismissal of one of these overlapping claims is appropriate, Defendant can seek such relief either in a motion for reconsideration or a motion for summary judgment.

Finally, Defendant argues that Plaintiff's fraud claim does not meet the heightened pleading requirements under Rule 9(b). Defendant first argues that Plaintiff failed to "plead specific allegations to support his claim that the Defendant had knowledge that the alleged misrepresentations regarding the defects were false and that the Defendant intended to induce the Plaintiff to enter into the real estate contract." [18, at ¶ 8]. However, Rule 9(b) provides that "intent, knowledge, and other conditions of a person's mind may be alleged generally." See also *Hefferman v. Bass*, 467 F.3d 596, 602 (7th Cir. 2006) (finding that the plaintiff adequately alleged intent and knowledge by stating that the "fraud and breach of fiduciary duty was knowing and intentional"). Here, Plaintiff alleged that Defendant had actual knowledge of the the material misrepresentations and intended for Plaintiff to rely on them when purchasing the property. [17, at ¶ 34]. Moreover, contrary to Defendant's characterization of the complaint, Plaintiff does make specific factual allegations supporting his claim that Defendant acted with knowledge and intent. For example, Plaintiff alleges that Defendant actively concealed the termite damage by erecting new non-structural walls over the damage without replacing the wood for the structural walls, joists, and beams necessary to support the structure. [*Id.*, at ¶ 11]. He also alleges that Defendant concealed the damage to the foundation by piling heavy construction materials in front of the cracks and defects to avoid detection by Plaintiff until after the closing of the transaction. [*Id.*, at ¶ 16]. Defendant additionally argues that Plaintiff failed to allege "how the Defendant misrepresented the condition of the property." [21, at 6]. However, Plaintiff alleges that Defendant misrepresented the condition of the property by including inaccurate information on the property report.

IV. **Conclusion**

For the reasons stated above, Defendant's motion [18] is denied. Counsel are directed to

file a joint status report no later than July 29, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

Dated: July 15, 2021

Robert M. Dow, Jr.
United States District Judge